## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                                    )
CDM SMITH INC.,                     )
                                    )
                Plaintiff,          )
                                    )          Civil Action
v.                                  )          No. 20-cv-12108-PBS
                                    )
KHALIL ATASI,                       )
                                    )
                Defendant.          )
                                    )
_____)
```

## MEMORANDUM AND ORDER

March 29, 2022

Saris, D.J.

## INTRODUCTION

Plaintiff CDM Smith Inc. ("CDM") brings this action against its former employee, Defendant Khalil Atasi, who successfully litigated a claim for compensation under a Saudi Arabian contract against CDM in the Kingdom of Saudi Arabia ("KSA"). Alleging that Atasi was paid twice for the same work, CDM asserts claims under state law seeking the return of the duplicate wages. CDM claims unjust enrichment (Count I), money had and received (Count II), breach of the duty of loyalty and against self-dealing (Count III), breach of a constructive trust (Count IV), conversion (Count V), breach of the implied covenant of good faith and fair dealing (Count VI), negligent and/or intentional misrepresentation (Count

VII), and fraud on the court (Count VIII). CDM also seeks a declaratory judgment:

> (a) that the KSA Instrument did not require CDM to pay Atasi a salary <u>in addition</u> to the compensation he received pursuant to his at-will employment arrangement; and (b) that the KSA Award is not recognized or conclusive under the Massachusetts Uniform Foreign Money-Judgment[s] Recognition Act (M.G.L. c. 235 § 23); and [(c)] ordering Atasi to return the Funds to CDM.

Dkt. 24, ¶ 110.

Atasi has moved to dismiss on the grounds of collateral estoppel, forum non conveniens, and failure to state a claim as to several counts. As to collateral estoppel, Atasi argues that all claims are precluded by the KSA judgment, which is entitled to recognition and enforcement under Massachusetts' version of the Uniform Foreign Money-Judgments Recognition Act ("Massachusetts Foreign Money-Judgments Recognition Act"). As to forum non conveniens, Atasi argues that the KSA contract's forum selection clause should be enforced via the dismissal of all claims without prejudice to refiling in the KSA. And Atasi argues that Counts III, IV, V, VI, and VIII fail to state a claim upon which relief can be granted.

CDM has moved to strike the expert affidavits on the law of Saudi Arabia that Atasi filed with his Motion to Dismiss, arguing that they cannot be considered at the motion-to-dismiss stage and that at least portions of them are inadmissible under Federal Rules of Evidence 702 and 403. Atasi responds that the affidavits are

admissible under Federal Rule of Civil Procedure 44.1 for the determination of foreign law.

After hearing, Plaintiff's Motion to Strike Defendant's Expert Affidavits (Dkt. 51) is **ALLOWED IN PART** and **DENIED IN PART**. Defendant's Motion to Dismiss (Dkt. 40) is **ALLOWED IN PART** without prejudice under the doctrines of collateral estoppel and forum non conveniens as to Counts III, IV, V, VI, and VIII and **DENIED IN PART** as to Counts I, II, and VII.

### FACTUAL BACKGROUND

The verified amended complaint alleges the following facts. In addition, the court considers the rulings of the court in KSA. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (noting the rule that courts do not consider documents outside of the complaint at the motion-to-dismiss stage before explaining that "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

### I.   Two Contracts

CDM, an engineering and construction firm in Massachusetts, hired Khalil Atasi in 2008, pursuant to an at-will employment contract, as an environmental engineer. At the time of his discharge in 2018, he was a Senior Vice President and Shareholder. Atasi's responsibilities included traveling to various countries

in the Middle East, including the KSA, where he managed the company's operations. He was being paid an annual salary of $228,841 (not including benefits) by CDM's accounting office in Massachusetts. He held a power of attorney authorizing him to act as a fiduciary on CDM's behalf.

For CDM to hold a KSA Commercial Registration, the person responsible for the company's KSA operations, or "General Manager," was required to hold a work permit and a residence visa known as an Iqama. Acquiring these documents required a written employment contract from the local KSA CDM entity. As such, Atasi prepared a document, written in both English and Arabic, evidencing his employment with CDM's local KSA branch. The document was executed on September 15, 2015; Atasi asked a CDM employee in KSA to whom he reported to sign on the company's behalf. An email transmitting the document states that the KSA contract's salary was intended to "match" his existing U.S. compensation. The KSA contract contained a forum selection clause that read, "Any disputes or differences arising between the two contract parties . . . shall be referred to the competent authorities concerned in solving the disputes according to the Law of Labor." Dkt. 40-3 at 13. The next provision made clear that this is the "Law of Labor of the Kingdom of Saudi Arabia." Id.

Atasi's job responsibilities did not change after executing the KSA contract and he spent less time in the KSA than he had

[4]

previously. Prior to his termination, Atasi did not ask for payment under the KSA contract and never received any. He filed timesheets for U.S. payroll payments, not the separate timesheets used for local payroll in the KSA. CDM continued to pay Atasi under his U.S. contract until it wound down its KSA operations and terminated Atasi in February 2018.

## II.   **Atasi Sues CDM in the KSA**

Shortly after his termination, Atasi commenced a legal action before the KSA Labor Committee, alleging that the KSA contract was a separate contract entitling him to payment in addition to his payment under the U.S. contract. He told the Committee that he had previously asked for this additional salary to be paid, and that CDM had told him its KSA bank account was frozen and that he would receive his payment, and his accumulated vacation time, once all of the company's matters in the KSA were addressed. CDM alleges that Atasi lied to the Committee.

According to CDM, the proceedings were unfair. Under the KSA Committee's procedures, CDM was unable to conduct any electronic or document discovery. No oral testimony was permitted, and the factual submissions through attorneys were not submitted under oath.

The KSA Committee found for Atasi, holding:

> [T]he plaintiff's contracts were fundamentally different as the job title in his contract signed in the United States of America was under the name (environmental

> engineer) with a weekly wage of $ 7308 and the contract
> the one executed + [sic] in the Kingdom of Saudi Arabia
> under another job title is (General Manager) in the tenth
> degree and the monthly wage is (74250) riyals, and
> therefore the two contracts are separate from each other
> and not as the defendant's attorney claimed.

Dkt. 40-3 at 35. CDM appealed, unsuccessfully. The KSA Supreme

Committee held:

> [T]he argument presented by the company which is based
> on claiming that the employment contract is fictitious
> and concluded only for completing procedures for the
> issuance of Work visa is not considered as a cause for
> cancelling what was drawn up and signed between the two
> parties, and if the case had been as stated by the
> company, it would have drawn up a document proving that
> that contract was fictitious, or presented whatever
> proofs to support such claim. Also the argument
> presented by the company that the employee has not
> claimed his wages throughout the period of his work at
> the company's branch in the Kingdom of Saudi Arabia is
> not a reason that leads to dropping the right.
> . . .
> Whereas the basis is the agreement, which was made and
> documented by signatures of the two parties, and as the
> defendant did not present in its arguments and in its
> list of appeal document and subsequent memos whatever
> proves that the labor relation is an extension of the
> relation with the company without additional
> obligations, and as it failed to provide evidence for
> all that it has mentioned, and it didn't present the
> email that it has mentioned. So, the Circuit agrees with
> what [was] stated by the Primary Commission which stated
> that the relation with the branch is an independent
> relation which is separate from the relation with the
> parent company, and it agrees with it in the judgment
> about wages of the employee for his period of work.

Id. at 83-84. CDM was ordered to pay Atasi the equivalent of

$760,744 for his salary under the KSA contract along with an end

of service gratuity payment and compensation for his untaken leave.

CDM paid the KSA Enforcement Court the full amount to avoid further

penalties and made a formal demand upon Atasi to return the funds, which are now deposited in a Bank of America Account.

## DISCUSSION

### I.   Motion to Strike Defendant's Expert Affidavits

Atasi attached several exhibits to his Motion to Dismiss, including the original Arabic court filings and the English translations of these filings. CDM has moved to strike two affidavits that were attached to the motion: one by Zikra Bint Mohammad Bin Abdullah AlQarni, who represented Atasi in the KSA action, and one by Saad AlMansour, who was not involved in the action, but whom Atasi describes as "a lawyer with years of experience practicing in Saudi Arabia and a deep understanding of both the Saudi and American legal systems." Dkt. 55 at 2.

CDM argues that these two affidavits should be stricken, primarily arguing that they cannot be considered on a motion to dismiss because they introduce facts outside the pleading. Alternatively, CDM argues they should be stricken as inadmissible under Federal Rules of Evidence 403 and 702.

As the parties agree, Federal Rule of Civil Procedure 44.1 governs the admissibility of evidence "[w]hen foreign law is relevant to a case instituted in federal court." Animal Sci. Prods., Inc. v. Heibei Welcome Pharm. Co. Ltd., 138 S. Ct. 1865, 1869 (2018). The Rule provides, "In determining foreign law, the court may consider any relevant material or source, including

testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. This is because a determination of foreign law "must be treated as a ruling on a question of law." Id. CDM does not dispute that Rule 44.1 governs the admissibility of affidavits for the determining of foreign law, even on a motion to dismiss, but argues that the fundamental issue raised by the Motion to Dismiss is the application of the Massachusetts Foreign Money-Judgments Recognition Act, a state law.

In applying the Massachusetts Foreign Money-Judgments Recognition Act, a court must determine foreign law. Questions such as whether KSA tribunals are impartial, whether they use procedures compatible with the requirements of due process, and whether they recognize Massachusetts judgments all involve at least in part questions of law, so Rule 44.1 governs. See Soc'y of Lloyd's v. Ashenden, 233 F.3d 473, 477 (7th Cir. 2000) (explaining that whether a foreign state provides impartial tribunals and procedures compatible with due process "is not, strictly speaking, a question of law . . . , but it is a question about the law of a foreign nation, and in answering such questions a federal court is not limited to the consideration of evidence that would be admissible under the Federal Rules of Evidence").

Insofar as the affidavits help with these determinations of foreign law, they are admissible under Rule 44.1. See 9A Charles

[8]

Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2444 (3d ed. 2008) ("Since foreign law is an issue to be determined by the district judge, an expert witness has not been required to meet any special qualifications.). That said, Rule 44.1 does not allow for the admissibility of expert testimony that goes beyond helping the court determine the content of foreign law. See id. ("Although courts do not strike experts who offer legal conclusions, the purpose of an expert witness in foreign law is to aid the court in determining the content of the applicable foreign law, not to apply the law to the facts of the case."). The portions of the affidavits that attempt to introduce facts of the case not found in the pleadings, rather than the content of foreign law, are not governed by Rule 44.1 and so will not be considered on this Motion to Dismiss.

II.   **Motion to Dismiss**

A. **Massachusetts Foreign Money-Judgments Recognition Act and Collateral Estoppel**

Atasi argues that the action should be dismissed on the ground that the action is barred by the doctrine of collateral estoppel because the KSA judgment is recognizable under the Massachusetts Foreign Money-Judgments Recognition Act and precludes relitigation of CDM's claims. CDM responds that the KSA judgment is not conclusive under Massachusetts law because it was not rendered under a system that provides impartial tribunals and procedures

compatible with due process and cannot be recognized under Massachusetts law because it was procured by fraud, Atasi's claim for double salary is repugnant to the public policies of Massachusetts, and Massachusetts judgments are not recognized in the KSA. CDM also argues that, even if the KSA judgment is conclusive and recognizable, Atasi has not met the necessary elements of collateral estoppel, so the judgment has no preclusive effect.

*1. Massachusetts Foreign Money-Judgments Recognition Act*

The Massachusetts Foreign Money-Judgments Recognition Act provides that "any foreign judgment that is final and conclusive and enforceable where rendered . . . shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money." M.G.L. c. 235, § 23A. CDM argues that the following statutory exceptions apply: a foreign judgment shall not be "conclusive" if "it was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law" and a foreign judgment shall not be recognized if "the judgment was obtained by fraud," "the cause of action on which the judgment is based is repugnant to the public policy of this state," or "judgments of this state are not recognized in the courts of the foreign state." Id. Whether a foreign judgment should be recognized must be determined when a party seeks to rely on the prior adjudication of a controversy,

including under the doctrine of res judicata. See Evans Cabinet Corp. v. Kitchen Int'l, Inc. 593 F.3d 135, 142 n.8 (1st Cir. 2010). "The burden of proof in 'establishing the conclusive effect of a foreign judgment is on the party asserting conclusiveness.'" Bridgeway Corp. v. Citibank, 45 F. Supp. 2d 276, 286 (S.D.N.Y. 1999) (holding a foreign system not impartial given an ongoing civil war) (quoting 11 Jack B. Weinstein et al., New York Civil Practice ¶ 5302.01 (1998)).

a.   System of Impartial Tribunals

The first issue is whether the KSA judgment was rendered under a system that provides impartial tribunals. To make this determination, the court must conduct an analysis of the "system" as a whole, regardless of whether the instant proceedings were impartial. See Ashenden, 233 F.3d at 477 ("The statute, with its reference to 'system,' does not support . . . a retail approach."). But the parties differ in how they view the scope of the "system": the judicial system as a whole or just the KSA Labor Courts.

CDM argues that KSA tribunals overall are biased against non-Muslim litigants and so are not impartial. CDM submitted expert testimony to address recognition under the Massachusetts Foreign Money-Judgments Recognition Act, but the affidavit does not directly address the issue of pro-Muslim bias. CDM's expert, Christopher H. Johnson, who has practiced Saudi Law for 43 years and served as an expert in Saudi Law for the U.S. Department of

[11]

Justice, did not discuss any bias, despite being asked to "analyze what substantive and procedural differences, if any, exist between the processes and procedures employed by the Commission and that of the American system of jurisprudence, with particular attention to . . . the criteria described in the Massachusetts Foreign Money-Judgments Recognition Act." Dkt. 50-8, ¶ 15.

CDM cites a section of a recent Department of State report on the KSA criminal system that found "the law and practice discriminate against women, noncitizens, nonpracticing Sunni, Shia, and persons of other religions" in trial procedures. U.S. Department of State, 2017 Country Reports on Human Rights Practices: Saudi Arabia 18, state.gov/reports/2017-country-reports-on-human-rights-practices/saudi-arabia/ ("For example, in most cases a woman's testimony before a court counts as only half that of a man's. Judges may discount the testimony of nonpracticing Sunni Muslims, Shia Muslims, or persons of other religions; sources reported that judges sometimes completely disregarded or refused to hear testimony by Shia."). The report raises serious concern abut the impartiality of the criminal justice system. See Restatement (Fourth) of Foreign Rel. L. § 483 ("Courts that systematically discriminate on the basis of factors such as nationality, race, sex, wealth, political affiliation, or other status may fail to qualify as impartial tribunals."). But the report does not address the impartiality of the KSA Labor Courts.

As to the KSA Labor Courts, a district court held, based on
the undisputed testimony of two expert witnesses, that the Labor
Courts were not an adequate forum because they would only credit
an individual's testimony if it is corroborated by two adult, male,
Muslim witnesses. Petersen v. Boeing Co., 108 F. Supp. 3d 726, 729
(D. Ariz. 2015) (holding that a forum selection clause was
unenforceable). A Massachusetts court also expressed doubt two
decades ago about KSA forums, also based on undisputed expert
testimony. See Rhodes v. ITT Sheraton Corp., No. Civ.A. 97-4530-
B, 1999 WL 26874, at *3 (Mass. Super. Ct. Jan. 15, 1999) (declining
to dismiss for forum non conveniens on the ground of biases against
women and non-Muslims in Saudi Arabia).

The question of impartiality is a close call. It is disputed
whether the system-wide analysis under the Massachusetts Foreign
Money-Judgments Recognition Act involves all aspects of the
judicial system or just the particular kind of court or procedures
involved in handling the type of dispute at issue. Atasi
convincingly focuses on the KSA civil legal system, and the KSA
Labor Courts in particular, as the system in question. This is the
"system" which must provide impartial tribunals and procedures
compatible with due process for its judgments to be recognized.

CDM's expert was silent as to any pro-Muslim bias, let alone
in the KSA Labor Courts specifically. Atasi's expert Almansour,
who has nine years of experience in Saudi Law, stated, "All parties

to a case before the labor commissions are treated equally as the judges are limited to base their decisions on the Saudi Labor law and as it is a given all Saudi laws including the Labor law considers opposing parties equal." Dkt. 40-4, ¶ 26. On the record before the Court, Atasi has met his burden in demonstrating that the KSA Labor Courts provide impartial tribunals.

b.   Procedures Compatible with Due Process

The second issue is whether the KSA judgment was rendered under a system that provides procedures compatible with due process of law. CDM argues that the procedures of the KSA Committee are not compatible with due process because they limit discovery and cross-examination, and primarily limit the formal presentation of evidence to written submissions, without requiring they be submitted under oath. See Dkt. 50-8, ¶¶ 22-32 ("It is my professional opinion that because of the due process limitations described above, CDM was deprived of the right to a fair and fully considered determination of all relevant facts consistent with U.S. Constitutional principles."). Contrary to the assertion of CDM's expert, these procedures are compatible with due process. See Ashenden, 233 F.3d at 476-77 ("The statute requires only that the foreign procedure be 'compatible with the requirements of due process of law,' and we have interpreted this to mean that the foreign procedures are 'fundamentally fair' and do not offend against 'basic fairness.'"); see also Restatement (Fourth) of

[14]

Foreign Rel. L. § 483 cmt. c (Am. L. Inst. 2018) ("[T]he absence of attorney cross-examination of witnesses or a foreign court's primary reliance on written depositions, rather than oral testimony, does not by itself constitute a fundamentally unfair approach to the presentation of evidence.").

        c.   Fraud on the Court

CDM alleges that the judgment was procured by fraud on the court, chiefly via falsehoods in the submissions. In the context of the Massachusetts Foreign Money-Judgments Recognition Act, "the fraud 'must relate to matters other than issues that could have been litigated and must be fraud on the court.'" Soc'y of Lloyd's v. Hamilton, 501 F. Supp. 2d 248, 252 (D. Mass. 2007) (quoting Soc'y of Lloyd's v. Mullin, 255 F. Supp. 2d 468, 473 (E.D. Pa. 2003)). There is fraud on the court "where it can be demonstrated, clearly and convincingly, that a party has essentially set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). A party "must prove 'the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges, employment of counsel to "influence" the court, bribery of the jury, and the involvement of an attorney (an officer of the court)

in the perpetuation of fraud.'" <u>In re Paternity of Cheryl</u>, 746
N.E.2d 488, 498 (Mass. 2001) (quoting <u>MacDonald v. MacDonald</u>, 552
N.E. 2d 533, 536 (Mass. 1990)).

CDM's allegations of falsehoods were actually litigated in
the KSA action. <u>See, e.g.,</u> Dkt. 40-3 at 28 ("We respond by saying
that what was stated by the plaintiff's attorney about a new
contract is false."). Moreover, any such allegations of falsehoods
about the issues in a case would not generally amount to the
egregious conduct of fraud on the court. <u>See Restatement (Fourth)</u>
<u>of Foreign Rel. L.</u> § 484 cmt. d ("False testimony or forged
evidence does not by itself provide a basis for nonrecognition
because it should have been raised and dealt with in the foreign
proceeding.").

> d.   Cause of Action Repugnant to Public Policy

CDM argues that Atasi's cause of action "to fraudulently
leverage a <u>double</u> salary" is repugnant to public policy, Dkt. 50
at 17, but this misstates the cause of action. Atasi brought a
breach of contract claim based on his allegation that he had a
separate KSA contract. Breach of contract is not a cause of action
repugnant to Massachusetts public policy. <u>See Mullin</u>, 255 F. Supp.
2d at 476 (holding a breach of contract action was not repugnant
to public policy, regardless of the facts underlying the cause or
the differences in law in deciding the action because "the Court

must focus on the 'cause of action' . . . [which] narrows the scope of the Court's inquiry significantly").

e.   Reciprocity

CDM and Atasi's experts stated opposite conclusions as to whether U.S. judgments are recognized by KSA courts. <u>Compare</u> Dkt.50-8, ¶ 39 ("It has been our law firm's experience that absent an international treaty, the Saudi Enforcement Court is reluctant to recognize or enforce foreign judgments.") <u>with</u> Dkt. 40-4, ¶ 36 ("[C]ourts in Saudi Arabia do enforce judgments from courts of the United States of America.") and Dkt. 40-2, ¶ 25 ("I . . . can attest that the courts of the Kingdom of Saudi Arabia regularly recognize and enforce [U.S.] judgments."). Atasi has produced evidence that United States judgments are recognized by the KSA: a 2008 KSA decision recognizing and enforcing a D.C. district court judgment. <u>See</u> Dkt. 81-1 at 12–13 ("[T]he principle of reciprocity between the Kingdom of Saudi Arabia and the United States of America exists . . . . Therefore, the Chamber decided to execute the judgment issued by the US District court for the District of Columbia.").[1] CDM has failed to produce a single instance of the

---

[1] CDM moved to strike this supplemental authority, arguing that Atasi failed to obtain leave to file its notice, included redundant argument with the authority, and failed to provide notice that he intended to raise an issue of foreign law, as required by Fed. R. Civ. P. 44.1. <u>See</u> Dkt. 83. But Atasi did not <u>raise</u> any issue of foreign law in filing the notice of supplemental authority; the question of reciprocity has already been briefed by both parties and the Court asked the parties at the hearing whether either had proof of reciprocity through a KSA case enforcing or refusing to enforce an American judgment. The Court allowed the notice of supplemental authority but refused to consider the additional briefing on the issues. <u>See</u> Dkt. 86; <u>see also</u> Fed. R. Civ. P. 44.1

KSA refusing to recognize a Massachusetts or United States judgment. Absent this evidence, its expert affidavit cannot rebut Atasi's evidence of reciprocity. The KSA judgment is entitled to recognition under the Massachusetts Foreign Money-Judgments Recognition Act.

> 2. *Collateral Estoppel*

Atasi moves to dismiss all claims under the doctrine of collateral estoppel based on the KSA judgment. Under the traditional approach to collateral estoppel:

> When the parties in a subsequent action are the same as those in a prior one, a party seeking to invoke the doctrine of issue preclusion needs to establish four essential elements: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment."

Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997) (quoting Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994)).

Here, the question of issue preclusion involves only issues actually decided in the KSA action. See Grella, 42 F.3d at 30 ("The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was actually decided in previous litigation . . . .").

---

("In determining foreign law, the court may consider any relevant material or source.") (emphasis added).

The KSA Committee held that "the two contracts are separate from each other" and that Atasi was owed money under the terms of the KSA contract. Dkt. 40-3 at 35. The Supreme Committee agreed, holding, "[T]he argument presented by the company which is based on claiming that the employment contract is fictitious and concluded only for completing procedures for the issuance of Work visa is not considered as a cause for cancelling what was drawn up and signed between the two parties." Id. at 83. While CDM argued in the KSA litigation that "those tasks that [Atasi] carries out as a director of the company's branch in the Kingdom of Saudi Arabia is among the core of his duties that were contracted with him in the United States of America," id. at 74, the KSA Committee did not actually decide the issue of whether CDM is entitled to an equitable set-off credit for duplicative pay, nor whether Atasi breached his duties to CDM in drafting a contract that would entitle him to unexpected payment and misrepresenting this intention. Atasi argued in the KSA action that the KSA Committee had "nothing to do with his contract in his country [the United States]." Id. at 35. The KSA Committee agreed. Insofar as the claims allege a cause of action arising under the KSA contract, they are barred under the doctrine of collateral estoppel. But the KSA judgment does not preclude the remaining claims relating to the U.S. employment contract.

[19]

**B. Forum Non Conveniens**

The Court next addresses Atasi's argument that all claims should be dismissed under the forum selection clause in the KSA contract. The KSA contract contains a forum selection clause that reads, "Any disputes or differences arising between the two contract parties . . . shall be referred to the competent authorities concerned in solving the disputes according to the Law of Labor." Dkt. 40-3 at 13. The next provision makes clear that this is the "Law of Labor of the Kingdom of Saudi Arabia." Id. "[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of forum non conveniens." Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 60 (2013).

Normally, a defendant moving for dismissal on forum non conveniens grounds "bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000). As to convenience and efficiency, "the defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." Id.

A valid forum selection clause alters the forum non conveniens analysis because the enforcement of bargained for provisions

protects the parties' legitimate expectations and furthers the interests of justice; thus "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Atl. Marine Constr. Co., 571 U.S. at 63 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). "[T]he plaintiff's choice of forum merits no weight" because the plaintiff agreed to a forum through the forum selection clause. Atl. Marine Constr. Co., 571 U.S. at 63. And the parties' private interests are not considered at all because, in agreeing to the clause, "they waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 64. In fact, "[a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. Additionally, "[m]ost courts do not discuss whether the location identified in an applicable, mandatory, valid, and enforceable forum-selection clause is available or adequate," on the assumption that the parties selected an adequate forum. Azima v. RAK Inv. Auth., 926 F.3d 870, 875 & n.2 (D.C. Cir. 2019).

   *1. Forum Selection Clause*

   In deciding whether a forum selection clause is enforceable, the Court first determines whether the clause is mandatory or permissive, then whether the claims at issue fall within the scope

of the clause, and finally whether the clause should be enforced. Atlas Glass & Mirror, Inc. v. Tri-North Builder, Inc., 997 F.3d 367, 374-75 (1st Cir. 2021).

### a. Mandatory or Permissive

"Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere. . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009) (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998)). Contrary to CDM's assertions, based on the use of this term "shall," this is best understood as a mandatory forum selection clause.

### b. Scope of the Clause

With respect to the scope of the clause, the forum selection clause is broadly written to cover "any" dispute, between the contracting parties, so claims relating to the KSA contract are covered by the clause.

CDM argues that the clause extinguished upon Atasi's termination and so this dispute outside the parties' contractual relationship, particularly as it relates to Atasi's actions in the KSA litigation. This misstates the law on forum selection clauses.

See <u>Litton Financial Printing v. NLRB</u>, 501 U.S. 190, 208 (1991)
("We presume as a matter of contract interpretation that the
parties did not intend a pivotal dispute resolution provision to
terminate for all purposes upon the expiration of the agreement.")

CDM also argues that some of its claims do not arise under
the KSA Contract and so cannot be governed by it. For example, it
argues that its claim for an "equitable right to a set-off" or "an
offsetting credit" for work under the U.S. contract falls outside
the scope of the KSA contract. Dkt. 50 at 26. I agree that some of
CDM's claims squarely arise under the separate U.S. contract. Count
I (unjust enrichment) focuses on Atasi's retention of the funds
"<u>and</u> his at-will salary." Dkt. 24, ¶ 59. Count II (money had and
received) asks for return of "Funds which in equity and good
conscience should be returned to CDM." <u>Id.</u> ¶ 63. Insofar as these
claims are based on CDM's right to recoup for its payment under
the U.S. contract for work that Atasi has already been paid for
under the KSA contract, the claims are outside the scope of the
forum selection clause. Similarly, Count VII (negligent and/or
intentional misrepresentation) focuses on Atasi's silence during
his at-will employment under the U.S. contract as to "his secret
intention to later seek double compensation under the KSA
Instrument." <u>Id.</u> ¶ 91. CDM argues that it "continued to pay Atasi
pursuant to the parties' at-will employment arrangement" in
reliance on Atasi's misrepresentation. <u>Id.</u> ¶ 94. This claim arises

[23]

under the U.S. contract and is outside the scope of the forum selection clause. Counts I, II, and VII are not dismissed because they are outside the scope of the forum selection clause and, as stated above, not barred by collateral estoppel because they were not decided in the KSA litigation.

On the other hand, claims involving the dispute between the parties relating to the KSA contract (Counts III, IV, V, VI, and VIII) fall squarely within the scope of the clause. Most of these claims are barred under the doctrine of collateral estoppel. However, to the extent they are not barred, they fall within the scope of the forum selection clause.

c. Enforceability

CDM argues that even for claims within the scope of the forum selection clause, the clause is unenforceable. There are four possible grounds for finding a forum selection clause unenforceable:

> (1) the clause was the product of "fraud or overreaching"; (2) "enforcement would be unreasonable and unjust"; (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or (4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

Atlas Glass & Mirror, 997 F.3d at 375 (quoting Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 48-49 (1st Cir. 2014)). CDM argues that all four grounds apply.

[24]

As to fraud and overreaching, CDM argues that "[a]s the person responsible for the Employment Contract's preparation and content, Atasi abused his authority as CDM's Senior Vice President to lure CDM into an ambiguous arrangement whereby he later would demand an additional salary to which he was not entitled." Dkt. 50 at 26. Fraud in this context refers to when "a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying." Rivera, 575 F.3d at 20 (quoting Restatement (Second) of Contracts § 164 (Am. L. Inst. 1979)). But this "requires a 'focused showing' that the inclusion in the contract of the forum selection clause itself was 'the product of fraud or coercion.'" Atlas Glass & Mirror, 997 F.3d at 376 (emphasis added) (quoting Huffington v. T.C. Grp., LLC, 637 F.3d 18, 24 (1st Cir. 2011)). CDM fails to argue that the clause itself, as opposed to the entire contract, was procured by fraud. Overreaching "refer[s] to one party's unfair exploitation of its overwhelming bargaining power or influence over the other party." Rivera, 575 F.3d at 21. There is also no evidence that the forum selection clause was induced by overreaching.

As to enforcement being unreasonable and unjust, CDM argues that enforcing the clause would undermine goals of predictability and certainty because the clause is ambiguous as to where disputes are to be adjudicated. But this is just rehashing its argument

[25]

that the forum selection clause is permissive. CDM also argues that requiring it to return to KSA is unreasonable and unjust because "CDM once again would be foreclosed from pursuing a jury trial, cross-examining Atasi, and obtaining discovery essential to its right of offset." Dkt. 50 at 28. As stated earlier, this argument is also unavailing; many foreign countries rely on trial procedures drastically different from the U.S. system, but this does not make trial in those countries unjust. See Restatement (Fourth) of Foreign Rel. L. § 483 cmt. c ("[T]he absence of attorney cross-examination of witnesses or a foreign court's primary reliance on written depositions, rather than oral testimony, does not by itself constitute a fundamentally unfair approach to the presentation of evidence.").

As to difficulty and inconvenience, CDM argues that key witnesses live and work in Massachusetts and throughout the United States, that all records are maintained in Massachusetts, that it is questionable whether a KSA tribunal could have personal jurisdiction over Atasi, and that the proceedings would be conducted in Arabic with respect to the claims involving the KSA contract. This fails to meet the "heavy burden of proof." In re Mercurio, 402 F.3d 62, 66 (1st Cir. 2005) (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)). Were this enough, "forum selection clauses would almost never be enforceable, for inconvenience to at least one of the parties is an almost foregone

conclusion when dealing with a provision that requires litigating away from one's home turf." In re Mercurio, 402 F.3d at 66; see also Royal Bed & Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda, 906 F.2d 45, 49 (1st Cir. 1990) ("[A] showing of inconvenience as to a foreign forum would not be enough to hold a forum-selection clause unenforceable, especially if that inconvenience was known or contemplated by the parties at the time of their agreement."). And the concern about personal jurisdiction can be disposed of because Atasi has agreed to "consent to the personal jurisdiction of the KSA courts for any claims which are refiled by CDM Smith in Saudi Arabia." Dkt. 41 at 18; see also Imamura v. Gen. Elec. Co., 957 F.3d 98, 108 (1st Cir. 2020) ("A defendant's 'concession' as to amenability to service of process in the alternative forum is generally sufficient.").

As to the argument that enforcement would contravene Massachusetts public policy, CDM argues that this Court has "a keen interest in preventing Atasi and others like him from gaming other Massachusetts employers who currently or are planning to do business in the KSA." Dkt. 50 at 31. But it cannot be said to contravene any policy of the Commonwealth to enforce a contractual provision not procured through fraud. See Cambridge Biotech Corp v. Pasteur Sanofi Diagnostics, 740 N.E. 2d 195, 201 (Mass. 2000) (agreeing that a fair and reasonable forum selection clause "in a

freely negotiated international commercial transaction" should be enforced).

CDM also argues again that KSA evidentiary laws are discriminatory in contravention of Massachusetts public policy, citing Petersen v. Boeing Co., 108 F. Supp. 3d 726 (D. Ariz. 2015). But the Petersen court noted that its conclusion that a KSA forum was inadequate does not "render the Saudi Labor Courts inadequate for every dispute" because "[n]ot every claim in Saudi courts rests on testimonial evidence or lacks male, Muslim witnesses from whom to procure such evidence." Id. at 732. Many courts have held that the KSA provides an adequate forum for employment disputes. See Alayan v. Permanent Mission of Saudi Arabia to the United States, no.18-cv-10068, 2021 WL 1964078, at *2 (S.D.N.Y. May 17, 2021) ("The Court is unable to find Saudi Arabia to be an inadequate forum for these claims [over severance payments]."); Kamel v. Hill-Rom Co., Inc., 108 F.3d 799, 803 (7th Cir. 1997) ("Kamel does have a potential avenue for redress in Saudi Arabia in his breach of contract action."); Forsythe v. Saudi Arabian Airlines Corp., 885 F.2d 285, 290 (5th Cir. 1989) ("There is no indication that a Saudi Arabian forum would treat Forsythe unfairly or deprive him of all remedies [for wrongful discharge]."). CDM has not demonstrated that in the context of an employment dispute based on a written employment contract that it would be discriminated against such that it could be afforded no relief whatsoever or that the KSA has

[28]

substantive law "that is both different and basically unjust." Ahmed v. Boeing Co., 720 F.2d 224, 226 (1st Cir. 1983) (Breyer, J.) (finding Saudi Arabia an adequate alternative forum). Enforcement would not be contrary to public policy.

In sum, dismissal is appropriate under forum non conveniens, based on the forum selection clause. CDM has not argued that public interest factors weigh against dismissal, outside of the arguments this Court has rejected as to enforceability of the forum selection clause. This is not the exceptional case where the clause should not be given controlling weight. See Atl. Marine Constr. Co., Inc., 571 U.S. at 64 ("Because those [public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.").

**C. Failure to State a Claim**

Defendant moves to dismiss Counts III, IV, V, VI and VIII for failure to state a claim. However, all these claims are either barred by the KSA judgment or fall within the forum selection clause. Count III alleges that Atasi breached his duty of loyalty and against self-dealing "by lying to the KSA Committee and falsely stating in his factual submissions that CDM was required, but refused, to pay him double for the same work." Dkt. 24, ¶ 69. Count VI similarly alleges Atasi breached the implied covenant of good faith and fair dealing "by lying to the KSA Committee and misrepresenting to the Committee that the Instrument was intended

to pay him twice for the same work." Id., ¶ 87. Count IV alleges that the funds Atasi received in the KSA litigation "represent a constructive trust, arising by operation of law," and that his refusal to return the funds is a breach of the constructive trust. Dkt. 24, ¶ 75. Count V alleges that Atasi wrongfully converted CDM's money by taking the funds awarded in the KSA litigation. Count VIII alleges that Atasi committed fraud on the (KSA) court, arguing his "use of the KSA Instrument as a means in which to improperly double his salary, coupled with his lies to the KSA Committee [was] an unconscionable scheme calculated to interfere with the Committee's ability to impartially adjudicate CDM's employment obligations." Dkt. 24, ¶ 98. These claims are dismissed without prejudice to refiling in the KSA.

CDM argues that some of these counts are not barred by res judicata or the forum selection clause, stating that "[b]y focusing on his post-termination conduct, Atasi ignores the laundry list of responsibilities that he breached when he was employed by the company." Dkt. 50 at 34. As to Counts III and VI, it alleges in its brief that Atasi breached his duty of loyalty and against fair dealing and the covenant of good faith and fair dealing by preparing the KSA contract while intending "to use the document's purposeful ambiguity as means in which to leverage a double salary," and by failing to inform CDM of his belief that he was owed a second salary until after his employment was terminated.

Id. However, the complaint only pleads breaches through post-termination activity, so these arguments fail to support the claims. Counts III, IV, V, VI and VIII are dismissed without prejudice.

### ORDER

For the reasons stated above, Plaintiff's Motion to Strike Defendant's Expert Affidavits (Dkt. 51) is **ALLOWED IN PART** and **DENIED IN PART**. Defendant's Motion to Dismiss (Dkt. 40) is **ALLOWED IN PART** without prejudice as to Counts III, IV, V, VI, and VIII under the doctrines of collateral estoppel and forum non conveniens and **DENIED IN PART** as to Counts I, II, and VII.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge